72 So.2d 786 (1954)
KAY
v.
KEY WEST DEVELOPMENT CO. et al.
Supreme Court of Florida. Division B.
May 21, 1954.
Sibley & Davis, Miami Beach, for appellant.
McCune, Hiaasen & Kelley, Ft. Lauderdale, for appellees.
DREW, Justice.
This is an appeal by Sam Kay, the plaintiff in the lower court, from a final decree dismissing his bill of complaint with prejudice after issues had been made up and the cause had been tried before the Circuit Judge.
It appears from the record in this cause that on or about the 5th of July, 1946, Edward Strong and Sam Kay purchased certain real estate in Key West, Florida, and took title to the same in Key West Development Company, a Florida corporation, created and organized by them solely for that purpose. It is undisputed that each *787 contributed one-half of the purchase price of the property and each owned one-half of the outstanding capital stock of the corporation.
Several years after acquiring the property, Edward Strong died and one Samuel T. Haas was duly qualified and appointed as the sole trustee and executor under his will, with full power to vote or dispose of the subject stock. It further appears that after the death of the said Edward P. Strong and after Samuel T. Haas had qualified and was sole executor and trustee under said last will and testament, Sam Kay, the plaintiff below, and the appellant here, sought to organize said corporation which had been dormant and inactive since the acquisition to the title of said lands for the purpose of effecting a sale thereof. Because of some reluctance on the part of the executor Haas to take action or cooperate in the organization of said corporation and because of dissensions and disagreements between Sam Kay, acting through his attorney, and the attorney representing the executor and the beneficiaries under the Strong estate, a deadlock was created, resulting in a situation rendering it impossible to reach an agreement on either a sale of said lands or a division of the same between the respective interests.
The plaintiff, feeling it expedient and desiring to dispose of his interest in said lands and finding it impossible to work out any sort of an arrangement to that end with opposing interests, instituted the proceedings in the lower court against the corporation, the executor and trustee and the beneficiaries under the will of Edward Strong, praying for the liquidation of the defendant corporation, a sale of its sole asset at public sale, and the division of the proceeds between the respective interests or, in lieu thereof, a partition of said property by sale as provided by law, as well as for a declaration of the rights and interests of the parties in the proceeds of the sale and an accounting with relation thereto, and for other relief. On these allegations, issues were made (including a counterclaim by defendants hereafter discussed), testimony was duly taken and the chancellor entered a final decree in which he held, inter alia:
"* * * I think that the corporation is valid. Nor should the corporation be dissolved by the Court and its assets distributed to the stockholders. The counterclaim seeks a form of remedy which it is impractical for the Court to enforce. It is
"Ordered, Adjudged and Decreed that the Bill of Complaint be dismissed with prejudice at the cost of the plaintiff, and the counterclaim is dismissed as seeking an inappropriate kind of relief."
It is from the foregoing final decree that the plaintiff below has appealed and the defendants have made cross-assignments of error. The cross-assignments are not argued and we therefore consider the same as having been abandoned.
While no findings of fact were made by the chancellor below, we have no difficulty, after a careful consideration of the record, in arriving at the conclusion that it is, and likely will continue to be, impossible for the appellant here and those representing the interests of the appellees, to agree upon a sale or division of the lands which constitute the sole asset of this corporation. Appellees insist that the reason for the deadlock is the fault of appellants, while appellants just as earnestly insist that the fault rests squarely on the shoulders of appellees. In any event, the record convinces us that there is a hopeless deadlock in the situation with each of these interests representing exactly one-half of the voting power of the corporation.
The plaintiff below is desirous of disposing of the property or effecting a division thereof, and the defendants below in their counterclaim prayed that the court enter an order requiring the plaintiff to cooperate in a program looking toward the private sale of the property as a whole. And so it appears that both parties are desirous of disposing of the sole asset of this *788 corporation but neither will agree with the other on the purchase price, division in kind, or just how such consummation is to be brought about. Under these circumstances, we think this case is governed squarely by the opinion of this Court in Wofford v. Wofford, 129 Fla. 445, 176 So. 499. The situation there was much more involved but from a legal point of view was identical to that presented here. An appeal was taken to this Court from a decree of the lower court, directing that the property there be sold "under equitable terms, conditions and provisions" which were detailed in the final decree. In the Wofford case the title to the property was held in a corporation and had been for many years, the stock being equally divided at the time of the suit and for some time before that between the two Wofford children. In that case the property involved in the litigation consisted of the sole assets of the corporation and while the decree did not dissolve the corporate entity, it directed the sale of said lands and assets and a division among the two brothers. We have carefully re-examined the holding in Wofford v. Wofford and the principles there discussed, and we find them particularly applicable to the situation revealed by the record in this case. On the authority of the holding in the Wofford case the chancellor below was clearly in error in dismissing the complaint.
The procedure adopted by Mr. Strong and Mr. Kay when they purchased this property, in taking it in the name of the corporation and equally dividing the stock, is one used in many transactions of this kind in this day and age. Hundreds of corporations are formed for the sole purpose of acquiring title to real estate in exactly the same manner as was done in this case. Such procedure is used for many and varying purposes. When a corporation is formed in the manner in which this corporation was formed, for the sole and only purpose of holding title to a specific property, the authority cited in Wofford v. Wofford, supra, sustaining the principle of disregarding the corporate entity and treating the stockholders as the persons in interest, is particularly applicable. Had this property been acquired by these two parties as tenants in common, the remedy of partition would have been immediately available in the event of a disagreement between them as to the price, manner or method of sale. The fact that the title is taken in the name of a corporation should not be allowed to create a legal vacuum which could well result in a situation that might be seriously injurious to one party who may be entirely free of fault or place one party at the absolute mercy of the other. The late Mr. Justice Ellis in Tampa Water Works Co. v. Wood, 97 Fla. 493, 501, 121 So. 789, 792, concluded that if no relief could be granted the complainant in that case because of the theories therein advanced, it would "be a denial of justice which it is the function of a court of equity to administer." We are impelled to the same conclusion in this case.
The argument could be and has been advanced on other occasions that such a situation would not leave the party desiring to sell, without a remedy because he could simply dispose of his stock-ownership representing one-half interest in the assets of the corporation. In theory this would appear to be a practical solution of the problem; in fact it is no solution at all. In a closed corporation of the type involved, a sale of stock is not effected in the manner it would be in a corporation listed on a recognized stock exchange. It is a matter of common knowledge that stock in such closed or closely held corporations have no recognized or standard market value and in order to effect a sale thereof, prospective purchasers usually look into the financial status, management and background of such corporation. An intelligent investor would not be willing to purchase the 50% interest of the stock of Mr. Kay in this corporation, knowing the situation which existed and realizing that the only thing he would be buying would be the privilege of paying his share of taxes and other costs on a corporate asset until such time as the owner of the other 50% of the stock would be willing to sell. If ever there was *789 a case where equity should intervene and provide a solution to a problem, it is in an instance such as this. In providing relief we can see no violence to any legal or equitable principle. See Sternberg v. Wolff, 56 N.J. Eq. 389, 39 A. 397, 39 L.R.A. 762, 67 Am.St.Rep. 494. It is not necessary in granting such relief to dissolve the corporation. Neither do we feel that intervention by a court of equity under the circumstances revealed by this record is in any way meddling with the internal affairs of corporate management. See Freedman v. Fox, Fla. 1953, 67 So.2d 692. The question involved here is much more substantial and real.
The Legislature by the passage of Chapter 28170, Laws of Florida, Act of 1953, added Chapter 608 to the Florida Statutes, F.S.A., and, in Section 608.28 thereof, recognized the necessity for providing for relief in instances of this kind. It is apparent that this statute would afford the appellant here a basis for the relief he seeks, but that statute was enacted subsequent to the institution of these proceedings. We see no reason, however, why the chancellor below, in the entry of an appropriate decree in this case, may not follow the pattern delineated by the statute and give substantially the same relief under its broad equity powers without getting into the question of whether the corporate entity itself may be dissolved by decree of the court. As we view the matter, full relief can be granted without destroying the legal existence of the corporation.
The complainant in the court below prays that the Court award plaintiff a reasonable attorney's fee to be paid out of the proceeds of the sale of the property. Attorneys' fees are provided for in suits for partition of real property. See Section 66.08, Florida Statutes 1953, F.S.A. Partition of real property, however, may be maintained under the statute only by "one or more of several joint tenants, tenants in common or coparceners, against their cotenants, coparceners or others interested in the lands to be divided." Section 66.03, Florida Statutes 1953, F.S.A. In this litigation there is no basis for the allowance of attorneys' fees to be paid out of the proceeds of the sale of the subject property.
The decree of the lower court appealed from is hereby reversed for further proceedings not inconsistent with the views herein expressed.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.