877 So.2d 813 (2004)
TOTALE, INC., a Florida corporation, and Harold Van Arnem, Appellants,
v.
Donald C. SMITH, Appellee.
No. 4D02-4801.
District Court of Appeal of Florida, Fourth District.
July 7, 2004.
*814 Drew M. Levitt and Lee D. Sarkin, Boca Raton, for appellants.
Robert B. Macaulay, Isaac J. Mitrani and Pamela Chamberlin of Mitrani, Rynor, Adamsky & Macaulay, P.A., Miami, for appellee.
GROSS, J.
In the circuit court, Donald Smith brought suit against appellants, Totale, Inc. and Harold Van Arnem, over a $100,000 investment gone bad. A jury found that (1) both Totale and Van Arnem had committed securities fraud and common law fraud; (2) Totale was unjustly enriched at Smith's expense; and (3) that Totale, but not Van Arnem, had committed civil theft. The jury assessed damages of $350,000.
We write to address the propriety of the damage award. As to the other issues, we find no error.[1]
The evidence at trial was that Smith sent a $100,000 check to a law firm for his investment in Totale. According to the pretrial stipulation, Totale received the check on March 3, 1999.
The trial focused on the issue of liability. Smith presented a convincing and comprehensive case for liability on the securities and common law fraud counts. During the trial, the parties paid little attention to the issue of damages. With the consent of the parties, the court's charge to the jury on damages was vague. Once it finished the instructions on the elements of the various theories of recovery, the court charged the jury:
If you find for the defendants, you will not consider the matter of damages, but if you find for Mr. Smith, you should award him an amount of money that the greater weight of the evidence shows will fairly and adequately compensate him.
After posing interrogatory questions on the theories of recovery, the verdict form asked one damages question: "What was the amount of damages suffered by Plaintiff?"
During closing argument, the only damages figure argued by Smith's attorneys was $100,000. One attorney said:
Obviously, [Smith's] injured. He's out $100,000 ... and I'm asking you to find, for Don Smith, civil theft against Mr. Van Arnem in the amount of $100,000, the exact amount of his check. *815 Moments later, while discussing the fraud counts, the attorney mentioned damages by stating: "So what Mr. Van Arnem did ... is he lied to Don Smith through his agent ... and again, it's the same $100,000 damages."
The goal of damages in tort actions is to "restore the injured party to the position it would have been in had the wrong not been committed." Nordyne, Inc. v. Fla. Mobile Home Supply, Inc., 625 So.2d 1283, 1286 (Fla. 1st DCA 1993). In Martin v. Brown, 566 So.2d 890 (Fla. 4th DCA 1990), we described the "flexibility theory" which allows two standards for measurement of damages in a fraud case:
Florida has adopted two standards for the measurement of damages in an action for fraudulent representation. Either may be used to do justice as the circumstances demand. The first standard is the "benefit of the bargain" rule which awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true. The second standard is the "out-of-pocket" rule which awards as damages the difference between the purchase price and the real or actual value of the property.
Id. at 891-92; see also Nystrom v. Cabada, 652 So.2d 1266, 1268 (Fla. 2d DCA 1995); Nordyne, 625 So.2d at 1286. "The `flexibility theory' permits the court to use either the `out-of-pocket' or the `benefit-of-the-bargain' rule, depending upon which is more likely [to fully] compensate the injured party." Nordyne, 625 So.2d at 1286. The "trial court may instruct the jury on the `out of pocket' rule or the `benefit of the bargain' rule as justice demands." Getelman v. Levey, 481 So.2d 1236, 1239 n. 4 (Fla. 3d DCA 1985) (emphasis added).
DuPuis v. 79th Street Hotel, Inc., 231 So.2d 532 (Fla. 3d DCA 1970), instructs how to apply the "flexibility theory" to do justice in a particular case:
(1) [I]f the defrauded party is content with the recovery of only the amount that he actually lost, his damages will be measured under that rule; (2) if the fraudulent representation also amounts to a warranty, recovery may be had for loss of the bargain, because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone; (3) where the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained; and (4) where the damages under the `benefit of the bargain' rule are proved with sufficient certainty, that rule will be employed.
Id. at 536 (quoting 37 AM.JUR.2D Fraud and Deceit § 352). In cases involving a fraudulent sale of stock, "[u]nder either measure of damages, plaintiffs must prove the actual value of the stock[ ] ... at the time of purchase." Strickland v. Muir, 198 So.2d 49, 51 (Fla. 4th DCA 1967), receded from on other grounds by Teca, Inc. v. WM-TAB, Inc., 726 So.2d 828 (Fla. 4th DCA 1999) (en banc).
Under this approach to determining damages, the crucial time for the measurement is the time of the fraudulent representation. Later appreciation or depreciation of the property that is subject of the false representation generally does not alter the fraud damage computation. For example, Schryburt v. Olesen, 475 So.2d 715 (Fla. 2d DCA 1985), involved the sale of a home by fraud. One item of damages awarded by the trial court was $15,393 for "loss of appreciation." Id. at 717. The second district struck that item of damages from the award, analogizing it to the loss of anticipated profits. The court *816 wrote that "[a]nticipated profits may constitute an element of damages where resale of the subject matter is contemplated by the parties and known to the representor, and where the plaintiffs pursue an action for both breach of contract and for fraud in inducing the contract." Id.; see also Nordyne, 625 So.2d at 1286-87 (holding that in a case involving fraud that induced the buyer to purchase a business, evidence of lost profits was properly admitted under either the "out-of-pocket" or the "benefit-of-the-bargain" approach to damages).
In this case, Smith had no problem demonstrating a loss under the "out-of-pocket" measure of damages. He received nothing in return for his $100,000 investment so his loss is $100,000 plus pre-judgment interest since March 3, 1999. However, using the DuPuis approach, Smith may not recover "benefit of bargain" damages because the evidence at trial of a loss in excess of the $100,000 was "so vague as to cast virtually no light upon the value of the property had it conformed to the representations." DuPuis, 231 So.2d at 536 (citation omitted).
Smith argues that the testimony of Philip McKnight, an associate of Van Arnem who worked for Totale, supports the $350,000 verdict. McKnight testified that the value of the company, in connection with a 2000 private placement of up to $20 million in financing, was between $130 million and $155 million; in November 1998, in connection with the completely different financing program that lured Smith, "there were discussions about the valuation, and there was a range, and the number that I recall was approximately $25 million." There was no other testimony concerning the value of the company in 1998 and 1999, at the time Smith made his investment. The argument that the five-fold increase in value reflects the valuation of the company as it was fraudulently represented to Smith is too speculative to support a damage award in excess of the $100,000 in lost principal. The trial judge recognized this weakness in the damages award by its comment at the hearing on a motion for remittitur, that "[t]here wasn't any testimony by anybody that said [Smith] lost anything other than the $100,000."
For these reasons we affirm the final judgment, reverse the damage award, and remand to the trial court for entry of an amended final judgment, with pre-judgment interest since March 3, 1999.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] The court's dismissal of the third-party complaint without prejudice was well within the trial court's discretion. See Fla. R. Civ. P. 1.270(b); Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, 769 So.2d 484, 487-88 (Fla. 4th DCA 2000); Brodfuehrer v. Estate of Brodfuehrer, 833 So.2d 784, 787 (Fla. 3d DCA 2002). The trial court properly excluded evidence of a settlement with a non-party. There was abundant proof to support the securities and common law fraud claims against Van Arnem.